UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KERLANGE O. o/b/o A.E.B.,

                Plaintiff,                          **DECISION AND ORDER**

      v.

                                                1:24-CV-00123 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

## INTRODUCTION

Represented by counsel, plaintiff Kerlange O. ("Plaintiff") brings this action on behalf of A.E.B., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for children's supplemental security income ("SSI").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 4; Dkt. 9), and Plaintiff's reply (Dkt. 10).  For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted, and Plaintiff's motion (Dkt. 4) is denied.

**BACKGROUND**

On August 26, 2020, Plaintiff protectively filed an application for SSI on behalf of

A.E.B., a child under the age of 18. (Dkt. 3 at 19, 67).[1] Plaintiff alleged A.E.B.'s disability

began on August 18, 2019, due to asthma, migraines, and Bell's Palsy. (*Id.* at 19, 69).

Plaintiff's application was initially denied on April 20, 2021, and upon reconsideration on

June 25, 2021. (*Id.* at 19, 115-30, 134-45). On May 16, 2022, Plaintiff and A.E.B.

appeared at an online video hearing before administrative law judge ("ALJ") William M.

Weir. (*Id.* at 19, 32-66). On December 28, 2022, the ALJ issued an unfavorable decision.

(*Id.* at 16-26). Plaintiff requested review by the Appeals Council, which was denied on

December 20, 2023, making the ALJ's determination the final decision of the

Commissioner. (*Id.* at 5-10). This action followed.

**LEGAL STANDARD**

I.    **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this

Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct legal standard." *Talavera*

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits.  *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009).  "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.'  Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations."  *Id*. (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1).  "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'"  *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)).  "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities.  An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities."  *Id.* (internal quotations and citations omitted).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether A.E.B. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924.  At step one, the ALJ determined that A.E.B. had not engaged in substantial gainful activity since August 26, 2020, the application date.  (Dkt. 3 at 20).

At step two, the ALJ found that A.E.B. suffered from the following medically-determinable impairments: "asthma, generalized anxiety disorder, fracture of the knee, exotropia, and Bell's Palsy."  (*Id.*).  The ALJ further found that A.E.B.'s medically determinable impairments did not cause more than minimal functional limitations, and

therefore A.E.B. did not have an impairment or combination of impairments that is severe. (*Id*. at 20-26). Accordingly, the ALJ found that A.E.B. was not disabled as defined in the Act. (*Id*. at 26).

## II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse and remand this matter to the Commissioner for calculation of benefits, arguing that the ALJ's conclusion that Plaintiff has no severe impairments is not supported by substantial evidence. (Dkt. 4-1 at 1, 15-30). In response, the Commissioner contends that the ALJ's conclusion is supported by substantial evidence, and Plaintiff's argument amounts to no more than Plaintiff's desire for the ALJ to re-weigh the evidence. (Dkt. 9-1 at 11-22).

"At step two, the ALJ determines whether a child has a medically determinable impairment or combination of impairments that is 'severe.'" *Jennifer F. o/b/o M.C.W. v. Comm'r of Soc. Sec.*, No. 20-CV-6587-FPG, 2022 WL 600841, at *2 (W.D.N.Y. Mar. 1, 2022) (quoting 20 C.F.R. § 416.924(c)). "The standard at step two is quite low," and "the Second Circuit has indicated that 'the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases.'" *O'Connor v. Saul*, No. 1:18-CV-00740 CJS, 2020 WL 1242408, at *3 (W.D.N.Y. Mar. 16, 2020) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014)). However, not all impairments are severe, and "an impairment or combination of impairments is not 'severe' if it 'causes no more than minimal functional limitations.'" *Jennifer F. o/b/o*

*M.C.W.*, 2022 WL 600841, at *2 (citation omitted).  The plaintiff bears the burden of proof at step two to establish that his or her impairments are severe.  *Id.*

At step two the ALJ assessed A.E.B. as having several impairments, including asthma, generalized anxiety disorder, fracture of the knee, exotropia, and Bell's Palsy. (Dkt. 3 at 20).  The ALJ then engaged in a lengthy discussion as to why these impairments were not severe.  (*See, e.g., id.* at 21 (citing to evidence supporting that A.E.B.'s asthma was well-controlled when he takes his medications, and treatment records demonstrated grossly normal pulmonary and respiratory findings upon examination); *id.* (discussing that A.E.B.'s migraine headaches are addressed by taking ibuprofen, his neurological examinations were normal, and A.E.B.'s mother reported to medical providers that she did not feel that the frequency of A.E.B.'s headaches met the threshold for initiating therapy); *id.* (discussing that A.E.B.'s Bell's Palsy, which he experienced in April 2020, resolved after prednisone); *id.* at 23 (discussing that A.E.B.'s right kneecap fracture from January 2022, for which he was prescribed a right knee immobilizer, crutches, and ibuprofen, and that A.E.B. returned to physical education class with a knee brace by March 2022, and subsequent clinical records showed grossly normal musculoskeletal clinical findings); *id.* (discussing that A.E.B.'s vision improved with glasses, he can play video games and watch television, he has no difficulty doing homework due to impaired vision, and his eye misalignment had improved)).    In other words, the ALJ explained that A.E.B.'s

impairments were well-controlled, responded to treatment, and resolved within a short period of time.

Plaintiff's argument appears to focus on the ALJ's assessment of the non-severity of his mental impairments, as opposed to his physical impairments. Specifically, Plaintiff argues that the ALJ did not properly evaluate the teacher questionnaires in the record and relied on cherry-picked evidence, and mischaracterized the record, to discount A.E.B.'s serious problems in the six domains of functioning. (Dkt. 4-1 at 15). Plaintiff maintains that the teacher questionnaires demonstrate that A.E.B.'s impairments are severe. (*Id*.).

With respect to A.E.B.'s mental impairments, the ALJ engaged in a lengthy discussion relating to A.E.B.'s attention deficit disorder, anxiety disorder, and social disorder, concluding that "given [A.E.B.]'s age-appropriate activities and functioning in the school setting, as well as the grossly normal mental status clinical findings upon examinations," those conditions were non-severe. (Dkt. 3 at 24-26). For example, the ALJ discussed that medical records demonstrated that A.E.B. had no more than mild limitations in mental functioning, including that he was cooperative with appropriate mood and affect. (Dkt. 3 at 24; *see also id*. at 340 (medical records reflecting psychiatric examination, which revealed that A.E.B. was cooperative and had appropriate mood and affect); *id*. at 524 (documenting largely normal mental status examination, showing that A.E.B.'s speech was normal, he was cooperative, had fair concentration, normal thought content, organized

thought processes, good fund of knowledge, and good memory, insight, and judgment)). Further, the records demonstrated that his family noticed that he had less anger. (*Id*. at 24).

The ALJ also discussed the opinions of the medical sources in the record, including the state agency physicians, who assessed that A.E.B. had no significant limitations in functioning. (*Id*.; *see also id*. at 74-77 (opinion of G. Wang, M.D., that A.E.B. does not have any combination of impairments that is severe); *id*. at 84-88 (opinion of J. Meyer, M.D., that A.E.B. does not have any combination of impairments that is severe)). The ALJ further noted that these opinions were consistent with the opinion offered by A.E.B.'s treating pediatric physician, Stephanie Fretz, M.D., who noted that A.E.B. had no limitations. (*Id*. at 848-50 (Pediatric Treating Medical Source Statement, noting that Dr. Fretz was "unable to assess" limitations in domains of functioning, but that A.E.B. had "no limitation" in his health and physical well-being)). The ALJ noted that these opinions were consistent with A.E.B.'s education records, which demonstrated improvement, with A.E.B. approaching or meeting expectation levels and no indication that A.E.B. had marked limitations in academics. (*Id*. at 24).

The ALJ also discussed the testimony offered by A.E.B. and his mother, including that A.E.B. sometimes has problems with school, but seeks help from teachers when needed. (*Id*. at 22). The ALJ further discussed A.E.B.'s testimony that he plays in gym class and with a few friends in his neighborhood for short periods of time due to breathing issues, he watches television and plays video games, and is able to make cereal and Nutella sandwiches for himself, noting that A.E.B.'s activities of daily living support no more than mild limitations in functioning age-appropriately. (*Id*. at 21, 24). Based on this evidence,

the ALJ concluded that A.E.B. "does not have an impairment or combination of impairments that significantly limits his . . . ability to perform age-appropriate activities." (*Id*. at 26).

With respect to Plaintiff's arguments regarding the teacher questionnaires, there are two teacher questionnaires in the record, completed by Kaitlyn Wojcik and Katherine Martin. Ms. Wojcik stated that she was A.E.B.'s fourth grade teacher, had known A.E.B. for seven months, and saw him in school daily. (Dkt. 3 at 274). She taught him language arts, math, science, and social studies. (*Id*.). Ms. Wojcik assessed problems functioning in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects, but no issues with caring for himself. (*Id*. at 275-79). A.E.B.'s issues in these areas ranged from being "a slight problem," to "a very serious problem," including that A.E.B. has a very serious problem with understanding and participating in class discussions, focusing for long enough to finish an assigned activity or task and refocusing to task when necessary, seeking attention appropriately, and relating experiences and telling stories. (*Id*. at 275-78). Ms. Wojcik noted that A.E.B. frequently does not follow directions and needs more reminders than his peers, that he often "stares off" and seems to intentionally not follow steps used in math, cannot work with a group, and often moves at an inappropriate pace. (*Id*.). Ms. Wojcik concluded that A.E.B. is "a smart young man," but that he "often chooses to not apply himself and do quality work." (*Id*. at 281).

The next teacher questionnaire was completed by Katherine Martin. Ms. Martin taught A.E.B. reading and some math, and saw him at school daily. (*Id*. at 285). Ms.

Martin assessed that A.E.B. had problems functioning in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about a manipulating objects, and caring for himself. (*Id*. at 286-90). A.E.B.'s issues in these areas ranged from being "a slight problem," to "a very serious problem," including that A.E.B. has a very serious problem with comprehending oral instructions, applying problem-solving skills in class discussions, paying attention when spoken to directly, sustaining attention during play/sports activities, carrying out multiple-step instructions, organizing his own things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, working at a reasonable pace, playing cooperatively with other children, making and keeping friends, relating experiences and telling stories, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation, moving his body and manipulating things, using good judgment regarding personal safety and dangerous circumstances, and knowing when to ask for help. (*Id*. at 286-90). Ms. Martin noted that A.E.B. has difficulty following "executive functioning skills," such as initiation, shifting from one task to another, working memory, planning, organization, and self-monitoring, and that he must be prompted several times to start a task, otherwise he will "sit and stare." (*Id*. at 286). He is "sluggish," has a difficult time focusing, and loses his homework daily. (*Id*. at 286-87). A.E.B. further has difficulty participating in discussions, falls easily, and does not have good awareness of his surroundings. (*Id*. at

288-89).  Ms. Martin stated that A.E.B. "sleeps daily at his desk and even when standing."

(*Id*. at 291).

> The ALJ discussed these questionnaires in the written determination:

> The teacher questionnaires completed by the claimant's teachers, Kaitlyn Wojcik and Katherine Martin, who opined the claimant has overall slight to serious problems in the six domains, with no problems in caring for himself, are only slightly persuasive (12E, 13E).  They also indicate that the claimant falls asleep at school, at his desk or while standing (13E/10).  While these statements are not from an accepted medical expert under Social Security Regulations, they are an opinion and observation of a claimant's functioning that must be considered.  His teachers have the opportunity to observe the claimant on a daily basis and able to take note of his behavior and progress in school.  As a teacher, they are familiar with the progress and behavior that can reasonably be expected from a child of the claimant's age and ability. The opinions are generally consistent with the correlating education records as well as the mental health treatment records in evidence outlined above; they are also generally consistent with each other.  However, they also indicate that the claimant often does not apply himself (12E/11).  Further, education records show improvement in the claimant's academics and behavior, noting he "strives to do his best every day" and shows progress with social interaction, writing, drawing, and stamina (16F/22-27). Moreover, treatment records show the claimant is cooperative with appropriate mood and affect (4F/3, 36, 115, 145, 150, 8F/20, 13F/95, 17F/14, 39, 46, 62).  Therefore, they are only slightly persuasive as the record as a whole supports greater abilities than opined.

(Dkt. 3 at 25-26).

The Court concludes that the ALJ did not err in assessing the opinions offered by Ms. Wojcik and Ms. Martin, nor did he err in finding that A.E.B.'s impairments were non-severe.  As explained above, the ALJ engaged in a lengthy discussion as to why he found that A.E.B.'s impairments were not severe, including because mental status examinations were largely normal, and the medical opinions in the record assessed that A.E.B. had no significant limitations in functioning.  (*See* Dkt. 3 at 20-26).  Contrary to Plaintiff's implication, the ALJ carefully considered the opinions offered by Ms. Wojcik and Ms.

Martin, but credited their statements that A.E.B.'s problems were caused by him not applying himself, rather than any severe impairment.  (*See, e.g.*, Dkt. 3 at 281 (Ms. Wojcik's conclusion that A.E.B. is "a smart young man," who "often chooses not to apply himself and do quality work"); *see also id.* at 276 (A.E.B. intentionally does not follow the steps they use in math, instead making up his own); *id.* at 277 (A.E.B. refuses to participate in a group or argues); *id.* at 278 (A.E.B. purposely falls down several times a week)). Further, Ms. Wojcik and Ms. Martin are not medical sources with experience in making diagnoses.  In fact, where the teacher questionnaires inquired about A.E.B.'s medical conditions, neither teacher listed any mental impairment—rather, Ms. Wojcik listed only "asthma," and Ms. Martin listed "unsure."  (*Id.* at 280, 291).

Further, the ALJ noted that certain statements made by Ms. Wojcik and Ms. Martin are contradicted by other evidence in the record, including A.E.B.'s improvements in his academics and behavior.  (*See, e.g.*, Dkt. 3 at 25; *see also id.* at 707-12 (report cards reflecting that A.E.B. was rated as largely "meeting grade expectations," and "approaching grade expectations" in his school subjects, including one report card stating that "[A.E.B.] shows progress," A.E.B. has been more outgoing with some students, his writing stamina has improved, but that he needs reminders not to draw in class and is still struggling with group work)).

In sum, the Court does not find that the teacher questionnaires undermine the ALJ's finding that A.E.B.'s impairments are non-severe.  Plaintiff's argument relating to the teacher questionnaires amounts to no more than a request for the Court to re-weigh the evidence, which would not be appropriate.  *See Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*,

No. 19-cv-9253 (AT) (BCM), 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("[T]he reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible [to] more than one interpretation."), *adopted*, No. 19 Civ. 9253 (AT) (BCM), 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021). In sum, the ALJ sufficiently discussed Plaintiff's impairments and why he determined them to be non-severe, and this conclusion is supported by substantial evidence in the record. Accordingly, remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 4) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 29, 2025
        Rochester, New York